JOSEPH B. PEAKS, in equity, *vs.* THOMAS S. DEXTER and ALBION P. McMASTER.

Piscataquis.   Opinion August 27, 1889.

*Equity.   Mortgage.   Assignment.   Discharge.   Cloud on Title.   Promissory Note.   Co-promisors.*

The plaintiff attached and sold on execution lands of his debtor, whose grantor as appeared by record in the registry of deeds had previously mortgaged, but were discharged by the assignee of the mortgage. Afterwards the assignee assigned to the defendants the mortgage which had been given by the debtor to secure a note made by him and the defendants. There was no evidence to show the debtor and the defendants bore any other relation to each other than that of co-promisors. Upon a bill in equity by the plaintiff, charging the defendants with attempting to set up their title under the assignment against him, and praying the court to decree the mortgage paid and satisfied and to enjoin the defendants against enforcing it:

*Held*, that the discharge by the assignee was a good discharge and satisfaction of the mortgage, as between the parties to the bill; and that it was not competent for the defendants to show that the mortgage note had been sold to them, by the assignee prior to the discharge.

*Held, also*, that in the absence of evidence showing that the mortgage note, as between the parties, was the note of the mortgagor and that it belonged to him alone to pay it, the defendants must be treated as co-promisors, and each bound to pay one-third. The defendants in their answer having admitted that their co-promisor had paid more than his part of the note,

they cannot be permitted to buy the note of the assignee, take an assignment of the mortgage and enforce it against the mortgagor, their co-promisor, or his grantee.

The plaintiff having amended his bill by alleging that he is in possession of the lands, was held entitled to a decree in his favor.

BILL IN EQUITY, reported to the full court for hearing on bill, answer, replication, documentary evidence, and the agreement of the parties to waive all technical and formal objections.

The question submitted for decision, was whether the mortgage given by Harvey Robinson to the Newport Savings Bank afterwards assigned to John C. Manson, dated March 26, 1873, and recorded in Piscataquis Registry of Deeds, vol. 63, p. 255, mentioned in the pleadings, shall be treated as a subsisting mortgage against the plaintiff notwithstanding the discharge of record by said Manson, or not. It was agreed that if the mortgage should be decided to be a subsisting valid lien, notwithstanding such discharge, the court might enter, in this suit, the same decree to that effect as if the defendants had filed a cross-bill for that purpose; otherwise decree was to be for complainant.

The facts are fully stated in the opinion.

*J. B. Peaks*, for plaintiff.

No mere allegation in a cross-bill that the discharge was made by accident or mistake would be admissible as a fact or statement. What was done, with the attendant circumstances legally proved, is required as a foundation for the decree of the court. The allegation that the discharge was made by mistake is not an allegation of facts or acts, but a statement of a legal opinion, anticipating the decision of the court by putting the law and not the facts before the court. The mistake must be proved beyond a reasonable doubt. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 102 Mass. 45. Pleadings on cross-bill: *Clay* v. *Towle*, 78 Maine, 86. Plaintiff entitled to have cloud on title removed. Pom. Eq. §§ 779, 783; *Lancy* v. *Randlett*, 80 Maine, 169. Attaching creditor stands in the position of a purchaser. *Woodward* v. *Sartwell*, 129 Mass. 212, 219. *Bona fides* of plaintiff: *Atkinson* v. *Runnells*, 60 Maine, 441. Delivery of note to defendants by Manson, no trust. R. S., c. 73, § 12. Mortgage was in possession and

under control of Manson at the time when it was discharged. *Cobb* v. *Dyer*, 69 Maine, 497 ; *Hayden* v. *Building & Loan Association*, (N. J.) Eastern Rep. No. 7, vol. 19, p. 860, Apr. 2, 1887 ; Kerr's Fraud and Mistake, 312, 436 ; Pom. Eq. §§ 776, 871.

*S. C. Strout, and Henry Hudson, J. W. Manson,* with them, for defendants.

Facts stated in defendants' answer are responsive and conclusive unless overcome by evidence. As against Robinson equity would decree the mortgage to be subsisting and valid. Plaintiff stands in no better position than Robinson. Mortgage discharged by Manson, after he ceased to be the owner; by mistake; without authority or knowledge of the defendants who were equitable owners having paid the amount due on the note.

Plaintiff's attachment was of Park's interest: he occupies the same position he would under a quitclaim deed from Parks. That interest was only a right to redeem the Robinson mortgage the existence of which he knew. A levying creditor is not a purchaser for value in the sense that he can destroy equities existing against a debtor. *Wood* v. *Main*, 1 Sum. 506 ; *Devoe* v. *Brandt*, 53 N. Y. 462 ; Freem. Judgments, §§ 356, 357 ; Freem. Executions, §§ 335, 336. He takes the same title he would get by a conveyance from the debtor with full notice of all existing legal or equitable claims. Freem. Judgments, §§ 356, 357.

Equity will relieve defendants. *Hayden* v. *Excelsior Building Association*, (N. J.), 19 Eastern Rep. 860 ; *Cobb* v. *Dyer*, 69 Maine, 497 ; *Bruce* v. *Baring*, 12 Gray, 108 ; Jones Mort. § 966. Sheriff's deeds to plaintiff convey only "all the right, title and interest" and "all the right in equity" of Parks, which in fact was the right to redeem from the Robinson mortgage. Such sales admit notice of the mortgage, liens and incumbrances. *Bailey* v. *Myrick*, 50 Maine, 185 ; *Knapp* v. *Bailey*, 79 Maine, 195. Plaintiff estopped to claim anything under Manson's mistaken and unauthorized attempted discharge, unless he can show actual payment of mortgage debt. There were two mortgages by Robinson, and Manson discharged the wrong one by mistake.

LIBBEY, J. In his bill, the plaintiff claims to be the owner in

fee of one undivided twelfth of certain lots of land described in it and claims that the defendants are attempting to set up against his title a certain mortgage given by Harvey Robinson to the Newport Savings Bank, March 26, 1873, as assignees thereof, and asks the court to declare said mortgage paid and satisfied, and enjoin the defendants against attempting to enforce it.

In their answer, the defendants deny that the mortgage has been paid and satisfied, and claim to own it as assignees. In the report upon which the case comes up, the parties stipulate that the question they desire the court to decide is, whether the mortgage given by said Robinson to said Newport Savings Bank, as aforesaid, shall be treated as a subsisting mortgage against the plaintiff notwithstanding the discharge of record hereafter to be referred to, or not. And it is further stipulated that the court, if it shall decide that the said mortgage is a subsisting valid lien notwithstanding the discharge of record, may enter in this suit the same decree to that effect as if said defendants had filed a cross-bill for that purpose ; otherwise decree to be for complainant.

So far as the title is in issue between the parties, its history is as follows : Harvey Robinson on the 26th of March, 1873, owned one-sixth undivided of the lots of land in controversy, and on that day mortgaged it to the Newport Savings Bank to secure the payment of a promissory note for two thousand dollars, payable in one year with interest at the rate of 10 % per annum until paid, signed by himself and these defendants. That mortgage was assigned by said Bank to J. C. Manson on the 27th of January, 1879. The mortgage and assignment were duly recorded.

On the 4th of October, 1881, said Manson entered upon the mortgage a discharge signed and sealed by him and duly acknowledged, reading as follows: "Having received full payment for the balance of within note, I hereby discharge the within mortgage." This discharge was duly entered of record October 10, 1881.

On the 27th of January, 1885, said Manson executed to the defendants an assignment of said mortgage which was duly entered of record, January 29, 1885. Under this last assignment,

the defendants claim to own the mortgage as against the plaintiff.

The plaintiff claims title under said Robinson through the following conveyances. By deed of warranty from said Robinson to Francis E. Parks, dated July 2, 1873, recorded August 27, 1873, of one undivided twelfth part of the lands.

On the 30th day of September, 1882, the plaintiff brought an action against said Francis E. Parks, returnable to the February term of this court for the county of Piscataquis, and on the 2nd of October, 1882, caused the lands of said Parks in said county to be duly attached thereon.

At the February term on the 7th of March, 1884, judgment was rendered in favor of the plaintiff and execution was issued on the 13th of said month. On the 27th day of March, 1884, said lands were seized on said execution by a deputy sheriff for said county, and after proceedings duly had, said lands were sold to the plaintiff by the officer on the 30th day of April, 1884.

On the 7th of November, 1881, Llewellyn Parks and others caused the lands of Francis E. Parks in the county of Piscataquis to be attached on a bill in equity pending in Somerset county, and at the March term of this court, in said county of Somerset, judgment was rendered against said Francis E. Parks in favor of Llewellyn Parks for four thousand three hundred and twenty-eight dollars and ninety-one cents. Execution was duly issued on said judgment, and within thirty days of the date of the judgment, and on the 9th of April, 1885, all the right in equity which said Francis E. Parks then had, or had on the 7th day of November, 1881, the day of the attachment, in the undivided one-twelfth of said lands was seized by a deputy sheriff of Piscataquis county on said execution, and after proceedings were duly had therefor, on the 15th day of May, 1885, said right in equity was sold by the officer to said Llewellyn Parks, and on the 23d day of November, 1886, said Llewellyn Parks by deed of quitclaim recorded November 29, 1886, conveyed all of his interest in said lands to the plaintiff.

There are other deeds put in evidence by the parties, but we think they have no direct bearing upon the question in issue.

By the foregoing statement of title, it appears that Robinson

conveyed the one-twelfth of the lands to Francis E. Parks after his mortgage to the Savings Bank by deed of warranty. It became his duty to cause the mortgage to be discharged and remove the incumbrance. And whenever the mortgage was paid or properly discharged upon the record by one having the legal authority to discharge it, Parks had an unincumbered fee. In October, 1881, Manson as assignee of the mortgage by the record, had a legal right to discharge it as to the mortgagor or one holding under him, and he was the only one having such power. His discharge entered upon the record, relieved Park's title from any incumbrance by it. The title stood in that way when the plaintiff made his attachment in October, 1882, and continued in the same condition when he purchased at the officer's sale in April, 1884. His purchase was the one-twelfth of the land owned by Parks, and not his equity or right in it. So that, testing the title by the record as it stood at that time, the plaintiff took the land unincumbered by the mortgage.

The defendants claim to set aside and have annulled the discharge of the mortgage by Manson on the ground that on or about the first day of January, 1880, they purchased the mortgage and the note secured by it, of Manson, paying him therefor the balance due on the note, and that Manson then promised to assign the mortgage to them; but for convenience, the mortgage was permitted to remain in the possession of Manson until he could conveniently make the assignment; and that they neglected to call upon him for an assignment till the 27th of January, 1885, when he made the assignment to them which has been referred to.

They claim that Manson had no power to discharge the mortgage in 1881 as to the mortgagor or any one claiming under him. We think this contention as to the plaintiff, is unsound. By permitting the mortgage to remain in the hands of Manson from 1880 until 1885, they gave to him as to third parties, so far as the record by which the title is to be tested disclosed anything, the power to discharge it. They cannot now vacate that discharge upon the grounds which they set up.

But if the discharge on the record should not be treated as fatal to the defendants, we do not see how they can prevail on the facts alleged in their answer.

By the agreement between the parties, we are to determine the case as if all the facts alleged in the answer were before us in a cross-bill, praying for a decree annulling the discharge and affirming the title of the defendants as assignees of the mortgage. By the mortgage of Robinson to the Savings Bank, it appears that the note secured by it was signed by Robinson *and the two defendants.* With no explanation of their relation to each other they must be treated as co-promisors, and each required to pay one-third. There is nothing in the allegations in the answer, or in the evidence, to explain their relation to each other. They are all competent witnesses but do not testify. The note is not produced. We cannot, therefore, hold that Robinson should pay the whole of the note. In their answer, the defendants say that said mortgage note has never been paid or satisfied by said Robinson, except in part,—$2,610.88. This is more than half of the note with the accumulated interest which it bears, and it is, and was in 1880, the duty of the defendants to pay the balance; and they cannot be permitted to buy the note of Manson, take an assignment of the mortgage and enforce it against Robinson or his grantee.

As originally drawn the plaintiff's bill contains no allegation that the possession of the premises described in it was in him. The court was of opinion that such an allegation was necessary but as no objection was raised on that point by the defendants leave was granted to the plaintiff to amend his bill in that respect. Under that permission the plaintiff has filed in the clerk's office a proper amendment so that the bill now contains a good statement of the plaintiff's case. The result is the discharge of the mortgage by Manson, found on the record, must be declared a valid discharge of it; and the subsequent assignment of it by him to the defendants is void and of no effect.

*Decree accordingly, with costs for plaintiff.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and FOSTER, JJ., concurred.